UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| AARON D. BOUFFARD )<br>    *Plaintiff*, )<br> )<br>v. )<br> )<br>ALEX RELYEA & CITY )<br>OF DANBURY )<br>    *Defendants*. | 3:20-cv-01239 (KAD)<br><br><br><br>SEPTEMBER 26, 2023 |

<u>**MEMORANDUM OF DECISION**</u>
**RE DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (ECF NOS. 48 & 49)**

Kari A. Dooley, United States District Judge:

    This case arises out of the non-fatal shooting of the Plaintiff, Aaron Bouffard, on July 3, 2019, by Defendant Alex Relyea, an officer with the Danbury Police Department. Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983 asserting, *inter alia*, that Relyea's use of excessive force violated his Fourth Amendment rights under the United States Constitution. He also asserts violations of Connecticut law. Plaintiff brings the same claims against the City of Danbury, as Relyea's employer. Pending before the Court are both Defendants' motions for summary judgment, in which they assert that they are entitled to judgment as a matter of law because Relyea's use of force did not violate the Plaintiff's constitutional rights and because, alternatively, he would be entitled to qualified immunity regardless.[1] By way of supplemental briefing, both Defendants also assert that because Plaintiff was convicted on charges "directly related" to the conduct for which he seeks civil relief, his claims regarding excessive force are barred pursuant to the Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477 (1994). Plaintiff opposes summary judgment and asserts that there are issues of material fact as to whether

---

[1] The City also asserts that it may not be held liable on a *respondeat superior* theory of liability. Plaintiff does not discuss this argument but clarifies in his opposition that he seeks *Monell* liability as to the City.

Defendant Relyea used excessive force, the issue on which each of his claims turn. For the reasons that follow, Defendants' motions for summary judgment are GRANTED.

**STANDARD OF REVIEW**

The standard under which courts review motions for summary judgment is well established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," while a dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Significantly, the inquiry being conducted by the court when reviewing a motion for summary judgment focuses on "whether there is the need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id*. at 250. As a result, the moving party satisfies his burden under Rule 56 "by showing . . . that there is an absence of evidence to support the nonmoving party's case" at trial. *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks omitted). Once the movant meets his burden, the nonmoving party "must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "[T]he party opposing summary judgment may not merely rest on the allegations or denials of his pleading" to establish the existence of a disputed fact. *Wright*, 554 F.3d at 266; *accord Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990). "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citations

omitted; internal quotation marks omitted). Nor will wholly implausible claims or bald assertions that are unsupported by evidence. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991); *Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir. 1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). "In deciding a motion for summary judgment, the district court's function is not to weigh the evidence or resolve issues of fact; it is confined to deciding whether a rational juror could find in favor of the non-moving party." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir. 2002).

**FACTS[2] AND PROCEDURAL HISTORY**

On July 3, 2019, the Plaintiff was a resident at the Midwestern Connecticut Council of Alcoholism ("MCCA") McDonough House, a residential drug treatment program he was required to enter as part of his probation requirements. Def. City of Danbury's Local Rule 56(a)(1) Statement of Undisputed Material Facts ("Def. City's LRS"), ECF No. 49-2, ¶¶ 1-2. That morning, Plaintiff had been awoken by the program's staff members after he had "relations" with a female resident the night before. *Id.* ¶ 3. According to Plaintiff, the staff was "hot on his trail" and

---

[2] This summary is comprised of facts taken from the parties' respective Local Rule 56(a) statements and derives principally from those facts about which there is no dispute. Indeed, Plaintiff admitted all of the City of Danbury's statements and all but one of the Defendant Relyea's statements. Although there are some minor disagreements as to how the events of July 3, 2019, unfolded, as offered in Plaintiff's Rule 56(a) statement of additional facts, for purposes of this decision, these factual disputes are immaterial to the Court's decision.

threatened to kick him out of the program. *Id.* The Plaintiff later observed "a kid that he didn't get along with in the detox section of the program." Believing that he was going to be removed from the program and incarcerated no matter what actions he now took, the Plaintiff assaulted the individual, a fellow resident of the program, punching him several times in the head. *Id.* ¶ 4.[3] A counselor subsequently instructed Plaintiff to leave the program, so he left the facility between 9:00 a.m. and 10:00 a.m., walking into the nearby woods. *Id.* ¶ 6.

After spending approximately twenty minutes in the woods, the Plaintiff returned to the program facility. He entered the building through the kitchen looking to "equip" himself with something that would cause responding police officers to keep their distance from him and allow him to flee. *Id.* ¶ 7. Plaintiff then obtained two butcher knives about 12-13 inches in length. *Id.*[4] During this time, Plaintiff encountered the female resident he had previously had "relations" with and another resident, both of whom told him to leave the facility because the police were coming for him. *Id.* ¶ 9. Plaintiff then removed his shirt so it would not get caught on bushes in the woods, and again left the facility. *Id.* ¶¶ 8-10.

Plaintiff then walked around the area, passing some hotels. *Id.* ¶ 13. He then backtracked to a wooded area with a swamp, crossed a soccer field and another patch of woods, and finally reached another hotel. *Id.* Near the hotel, Plaintiff observed "some people" he planned to ask to use a cell phone to call for a "ride out of there." *Id.* ¶ 14. It was then, at approximately 10:45 a.m., the police located Plaintiff in the woods between a nearby hotel and the soccer field. *Id.* ¶ 12, 15. When Plaintiff saw the officer, he paused and waited for him to speak. *Id.* ¶ 15. The officer instructed Plaintiff to stop and to drop his knives. *Id.* Plaintiff ignored these instructions, instead

---

[3] The victim of the assault had been the victim of a robbery by Plaintiff for which Plaintiff had been convicted and sentenced to three years in prison.
[4] During his deposition, Plaintiff acknowledged that his possession of the two knives could be perceived by officers as "something dangerous." However, he did not want to go back to jail. *Id.* ¶ 11.

turning around and running towards the soccer field, where he encountered a fence. *Id.* ¶ 16. Plaintiff threw the knives over the fence and then jumped over it into the soccer field. *Id.*

Once in the soccer field, Plaintiff assessed his situation. He observed two police officers approaching him from his left (walking southbound along the fence line to the east side of the field), and two officers in a driveway area (at the south end of the field) to his right. *Id.* ¶ 17. Plaintiff then noticed that one of the officers in the parking lot had a police dog with him. *Id.* He also saw an opening in the fence between the locations of the officers and planned to go through the opening before the officers could get near him. *Id.* Plaintiff ran towards the opening in the fence, and next heard the officer with the police dog say to him, "Aaron, what are you doing? Drop the knives." Plaintiff did not follow this instruction. Instead, he ran toward the opening in the fence saying "Go ahead, let the dog loose." *Id.* ¶¶ 16-17, 22.[5] As Plaintiff ran through the fence's opening, he observed two officers diagonally to his right and two officers coming upon the fence to his left. *Id.* ¶ 24. Plaintiff stepped diagonally to the left, towards some bushes and another perceived opening. *Id.* ¶ 25. He did not hear any officer warn him to drop the knives or that he was going to shoot. *Id.* As he came through the fence opening, Plaintiff observed Defendant Relyea to his left and saw that he had his firearm out. *Id.* ¶ 27. Relyea then shot Plaintiff at least four times, twice in the back. Pl.'s Local Rule 56(a)(1) Statement of Undisputed Material Facts ("Pl.'s LRS"), ECF 50-1, at 3. After Plaintiff fell to the ground, he was taken for treatment at Danbury Hospital, and then air-lifted to Yale-New Haven Hospital for additional treatment. *Id.* Plaintiff filed suit on August 24, 2020, naming as Defendants Relyea and the City of Danbury. *See* Compl. Relyea moved for summary judgment on August 30, 2022, and the City of Danbury on September 1, 2022.

---

[5] At his deposition, Plaintiff acknowledged that he never considered surrendering to the officers and that he took the knives from the MCCA because surrendering was not a consideration. *Id.* ¶ 21.

5

As noted above, Plaintiff denied paragraph 13 of Defendant Relyea's Rule 56(a)(1) statement, which provided: "When Officer Wolen ordered the Plaintiff to drop his knives, and that if he did so no one would get hurt, the Plaintiff replied with words to the effect of, "Not a chance, someone's going to die today." Plaintiff cited to his own deposition testimony, at page 46, to support this denial. *See* Pl.'s LRS at 2. However, during his deposition, Plaintiff only testified that he did not recall this exchange but that "it's possible" he made the statement attributed to him by Officer Wolen – "I don't recall that. I mean, it's possible, but I don't recall that as of today. Because like I said, Man, a lot of stuff was going on that day." ECF No. 48-3 at 25. Defendant Relyea submitted the Affidavit of Officer Wolen in which he avers that he told Plaintiff he was surrounded and that if he dropped the knives no one would get hurt. He further avers that "[Plaintiff] then came out from behind the bush, held up both knives in front of his face and yelled something to the effect of "Not a chance, someone's gonna die today!" ECF No. 48-4 at 2. Insofar as there is no evidence to refute Officer Wolen's testimony and Plaintiff himself acknowledges that it might have happened, his lack of present memory of the incident does not create a genuine issue of material fact as to whether this exchange occurred.

**DISCUSSION**

Both Defendants seek summary judgment on the merits of Plaintiff's Fourth Amendment claim of excessive force, or alternatively, on Defendant Relyea's defense that he is entitled to qualified immunity. The City of Danbury further asserts that any § 1983 claim directed against it fails as a matter of law and urges the Court to decline to exercise jurisdiction over the pendent state law claims, or in the alternative, find that they fail as a matter of law. Plaintiff opposes summary judgment, asserting that the objective reasonableness of Defendant Relyea's conduct is a question of fact for the jury. On February 3 and February 6, 2023, Defendants filed supplemental

memoranda in support of their motions for summary judgment, informing the Court that on February 1, 2023, Plaintiff was found guilty by a jury of criminal attempt to commit assault of public safety personnel, carrying a dangerous weapon, reckless endangerment in the first degree, and of interfering with an officer, all in violation of various provisions of Connecticut's penal code. Defendants argue that a finding in this case that Defendant Relyea's use of force was objectively unreasonable would necessarily imply the invalidity of Plaintiff's criminal conviction, and therefore the Defendants are entitled to judgment in their favor on this additional basis under the Supreme Court's holding in *Heck*. Plaintiff did not respond to this supplemental argument.

Upon review of the parties' submissions, the Court agrees with Defendants and finds that there is no genuine issue of material fact that Defendant Relyea's actions were objectively reasonable under the circumstances. Accordingly, the Court finds that Plaintiff suffered no Fourth Amendment violation and that qualified immunity would attach to Defendant Relyea's conduct regardless. Having so concluded, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

*Section 1983: Excessive Force*

Plaintiff alleges that Defendant violated his Fourth Amendment rights, as incorporated against the states by the Fourteenth Amendment, *see Tenenbaum v. Williams*, 193 F.3d 581, 602 n.14 (2d Cir. 1999), by using deadly force on July 3, 2019. "The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest." *Jamison v. Metz*, 541 F. App'x 15, 19 (2d Cir. 2013) (summary order) (internal quotation marks omitted). "A police officer violates the Fourth Amendment if the amount of force he uses in effectuating an arrest is objectively unreasonable in light of the facts and circumstances

confronting the officer." *Lennox v. Miller*, 968 F.3d 150, 155 (2d Cir. 2020) (internal quotation marks and alterations omitted).

"Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation marks omitted). More specifically, "[a] determination of whether the force used was reasonable requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Miller*, 968 F.3d at 155 (internal quotation marks omitted). Importantly, "[t]he reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (internal quotation marks omitted). Thus, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97. "In sum, the standard to be applied in determining whether the amount of force used exceeded the amount that was necessary in the particular circumstances is reasonableness **at the moment**." *Rogoz v. City of Hartford*, 796 F.3d 236, 247 (2d Cir. 2015) (emphasis added; internal quotation marks omitted).

"In light of the fact-specific nature of the inquiry on an excessive force claim, granting summary judgment against a plaintiff on such a claim is not appropriate unless no reasonable

8

factfinder could conclude that the officers' conduct was objectively unreasonable." *Miller*, 968 F.3d at 155 (internal quotation marks and alterations omitted).

*Qualified Immunity*

"[Q]ualified immunity protects government officials from suit if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "When a defendant invokes qualified immunity to support a motion for summary judgment, courts engage in a two-part inquiry: whether the facts shown 'make out a violation of a constitutional right,' and 'whether the right at issue was clearly established at the time of defendant's alleged misconduct.'" *Taravella v. Town of Wolcott*, 599 F.3d 129, 133 (2d Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 815–16 (2009). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 575 U.S. 822, 135 S. Ct. 2042, 2044 (2015). "Rights must be clearly established in a 'particularized' sense, rather than at a high level of generality," *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017), and while "a case directly on point" is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

"Therefore, an official is entitled to qualified immunity if, considering the law that was clearly established at the time, the official's conduct was 'objectively legally reasonable.'" *Nazario v. Thibeault*, No. 3:21-CV-216-VLB, 2022 WL 2358504, at *8 (D. Conn. June 30, 2022) (quoting *Taravella*, 599 F.3d at 133). "The objective reasonableness of an official's conduct 'is a mixed question of law and fact.'" *Id.* "At the summary judgment stage, while a conclusion that an official's conduct 'was objectively reasonable as a matter of law may be appropriate where there

9

is no dispute as to the material historical facts, if there is such a dispute, the factual question must be resolved by the factfinder.'" *Id.*

Considering these standards, it is manifest that the merits of Plaintiff's claim and the question of qualified immunity overlap significantly, as both require an assessment of the objective reasonableness of Defendant's conduct. *Diaz v. City of Hartford Police Dep't,* No. 3:18-CV-01113 (KAD), 2021 WL 1222187, at *5 (D. Conn. Mar. 31, 2021). Indeed, in some excessive force cases, the qualified immunity and Fourth Amendment issues converge on one question: "Whether in the particular circumstances faced by the officer, a reasonable officer would believe that the force employed was lawful." *Cowan ex rel. Est. of Cooper v. Breen*, 352 F.3d 756, 764 n.7 (2d Cir. 2003).

On this issue, the Defendants assert that there is no genuine issue of material fact as to the events giving rise to the use of deadly force. Defendants argue that, under the circumstances, Defendant Relyea's use of deadly force was reasonable under the circumstances. They further argue that Defendant's Relyea's belief that his use of deadly force was lawful and necessary to prevent Plaintiff from harming nearby officers and potentially civilians with butcher knives, was objectively reasonable. The Court agrees.

At the time of the encounter between Plaintiff and Defendant Relyea, Plaintiff had assaulted a co-resident at MCCA by punching him several times in the head. He later fled the facility carrying two butcher knives approximately 12-13 inches in length. Plaintiff's possession of these knives outside the facility and at the time of the encounter was itself a felony offense. *See* Conn. Gen. Stat. § 53-206.[6] Plaintiff armed himself with the knives in an effort to stave off any police officers who came too close to him until he could "get out of town." He ignored officers'

---

[6] This is in fact one of the offenses for which Plaintiff was convicted after trial.

repeated instructions to stop and drop his knives. He further evinced his determination not to surrender when he invited the canine officer to release the dog as he ran toward the opening in the fence. After he passed through the opening, the officers were converging on him from both sides. Notwithstanding, he continued to attempt to flee, moving near the direction of officers while still carrying the knives. He told Officer Wolen that he would not drop the knives and "someone's gonna die today."  Under these circumstances, the pursuit of an illegally armed individual, believed to have already committed an assault, and who was demonstrating a determination not to surrender, "no reasonable factfinder could conclude that [Officer Relyea's] conduct was objectively unreasonable." *Miller*, 968 F.3d at 155; *see also Santana v. City of Hartford*, 283 F. Supp. 2d 720, 727 (D. Conn. 2003) (conduct of officer in shooting individual brandishing knife and attempting to flee police pursuit was reasonable); *James Biggs v. City of New York*, No. 08-CV-8123 PGG, 2010 WL 4628360, at *4 (S.D.N.Y. Nov. 16, 2010) (conduct of officer in shooting individual lunging at other officers with knife was reasonable).[7] Accordingly, Relyea's motion for summary judgment on Plaintiff's excessive force claim is GRANTED.

*City of Danbury's Liability*

Because Defendant Relyea's use of force did not violate the Fourth Amendment, Plaintiff's claims against the City of Danbury fail as a matter of law. *See Mastromonaco v. Cnty. of Westchester*, 779 F. App'x 49, 51 (2d Cir. 2019) ("It is well-settled that a *Monell* claim cannot succeed without an underlying constitutional violation, and here there is no constitutional

---

[7] For the same reasons, Officer Relyea's belief that it was not unlawful for him to employ deadly force was objectively reasonable and he would be entitled to qualified immunity. *See Kisela v. Hughes*, 138 S. Ct. 1148, 1153–54, 200 L. Ed. 2d 449 (2018) (reasonable officer could have believed that employing deadly force did not violate the Fourth Amendment against woman armed with kitchen knife who had been approaching unarmed bystander and had failed to acknowledge police commands to drop the knife).

violation") (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986)).

*State Law Claims*

The City of Danbury urges the Court to decline to exercise jurisdiction over Plaintiff's pendent state law claims. "[T]he district court may, at its discretion, exercise supplemental jurisdiction over state law claims even where it has dismissed all claims over which it had original jurisdiction." *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996). Notwithstanding, courts regularly decline to exercise supplemental jurisdiction where all federal claims are disposed. *See Est. of Ferrara v. United Pub. Serv. Emps. Union*, No. 3:18-CV-0527 (VAB), 2020 WL 7714542, at *12 (D. Conn. Dec. 29, 2020); *Salatto v. City of Milford*, No. 3:08-CV-1071 (MRK), 2012 WL 774612, at *15 (D. Conn. Mar. 7, 2012); *Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001) (collecting cases). Here, Plaintiff alleges his state law claims in a single sentence: "The actions of the defendants described above also violated the plaintiff's rights under Connecticut law to be free from assault and police brutality." Compl. ¶ 10. Plaintiff's opposition to the City's motion for summary judgment discusses only his claim for *Monell* liability. He makes no mention of any purported state law claims nor addresses the question of supplemental jurisdiction. The Court therefore declines to exercise supplemental jurisdiction over any state law claims.

**CONCLUSION**[8]

For the foregoing reasons, Defendants' motions for summary judgment, ECF Nos. 48 and 49, are GRANTED. The Clerk of the Court is directed to enter judgment in favor of the Defendants and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 26th day of September 2023.

                                                  */s/ Kari A. Dooley*
                                                  KARI A. DOOLEY
                                                  UNITED STATES DISTRICT JUDGE

---

[8] The Court need not reach the question of whether Plaintiff's convictions implicate the Supreme Court's decision in *Heck.*